**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| D.W., *an incapacitated person, by her Co-Guardians, Ann L. Renaud and Kimberlie A. Fiero*,<br><br>                              Plaintiff,<br><br>                    v.<br><br>NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY, *et al.*,<br><br>                              Defendants. | Civil Action No. 21-15789 (ZNQ) (JBD)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon Defendant Michael Beasley ("Beasley") and Defendant Jennifer Israel's ("Israel")[1] (collectively "Individual Defendants") motions to dismiss Plaintiff D.W.'s ("Plaintiff") Second Amended Complaint ("SAC") (ECF No. 19). (ECF Nos. 33, 37.) After careful consideration of the parties' submissions, the Court decides the parties' motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Individual Defendants' motions are granted in part and denied in part.

---

[1] The Second Amended Complaint brings claims against Jennifer Peña, but those claims are properly pled against Jennifer Israel. (Def. Israel Moving Br. 1, ECF No. 37-1.)

I.      **BACKGROUND**[2]

A.      **Factual Background**

Plaintiff is "a mentally incapacitated, legally blind, and physically impaired woman who has the cognitive capacity of a young child." (SAC ¶ 3, ECF No. 19.) Beasley and Israel are both former or current New Jersey Department of Children and Families ("DCF") employees. (*Id.* ¶¶ 9-10.) Both Beasley and Israel were assigned to work on Plaintiff's file while employed by DCF. (*Id.*) DCF, the State of New Jersey, and the New Jersey Division of Child Protection and Permanency ("DCP&P") are also named as defendants alongside Beasley and Israel (collectively "State Defendants") in this matter. (*Id.* ¶¶ 6-10.)

In 2015, State Defendants terminated the parental rights of Plaintiff's mother ("Mother") and placed Plaintiff with her grandmother ("Grandmother") and grandfather ("Grandfather"). (*Id.* ¶¶ 12, 17-19.) Plaintiff was fourteen or fifteen years old when her grandparents were granted custody over her. (*Id.* ¶ 20.) Plaintiff resided with Grandfather and Grandmother in South River, New Jersey for several years. (*Id.* ¶ 26.)

Grandfather previously sexually abused his two daughters, including Mother. (*Id.* ¶ 21.) In 1987, he was charged with five (5) counts of aggravated sexual assault of a minor under the age of 13 and three (3) counts of endangering the welfare of a child. (*Id.* ¶ 23.) In 1991, Grandfather entered a plea bargain and pled guilty to these crimes. (*Id.* ¶ 22.) State Defendants were aware of Grandfather's prior convictions but placed Plaintiff in the care of Grandfather and Grandmother on condition that Grandfather never be left alone with Plaintiff. (*Id.* ¶¶ 25, 77.)

During Plaintiff's time with her grandparents, State Defendants received multiple reports from individuals that were greatly concerned about Plaintiff's well-being and safety. (*Id.* ¶ 58.) On

---

[2] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

April 15, 2016, Plaintiff, while attending South River Public School, asked to visit the school nurse's office. (*Id.* ¶ 27.) Plaintiff expressed concern that her underwear ripped during the night. (*Id.*) Plaintiff advised the school nurse, Bonnie Francione ("Francione"), or her staff, that she did not feel anyone rip her underwear, but that her twenty-year-old brother climbed into bed with her the night before.  (*Id.* ¶ 28.) Plaintiff informed Francione that Mother was aware of the situation and approved. (*Id.*) Upon inspection of Plaintiff's underwear, she found a clean slit, approximately 2.5 to 3 inches in length, that ran down the center of Plaintiff's underwear. (*Id.*) Francione called the police and DCP&P. (*Id.*) Beasley and Israel were informed of Plaintiff's disclosure to Francione and about the slit down Plaintiff's underwear. (*Id.* ¶¶ 28-29.) Israel, while working for DCP&P, advised the South River Police Department that she was actively investigating the case and that a follow-up would be conducted regarding the incident. (*Id.* ¶ 29.)

Approximately one year later, in April 2017, Francione again contacted Israel, DCP&P, and the South River Police Department after she discovered four yellowish bruises on Plaintiff's right arm that appeared to have been caused by fingers. (*Id.* ¶ 31.) In June 2019, Plaintiff went to the school nurse's office yet again with an apparent injury to her right eye. (*Id.* ¶ 43.) Plaintiff reported that her uncle became angry with her during a verbal altercation and struck her with a laptop. (*Id.*)

In July 2019, Plaintiff advised school staff that she was given medication by a family member intended to alter her mood. (*Id.* ¶ 39.) The medication was determined to be Seroquel and Gabapentin, neither of which Plaintiff was prescribed to take, and both of which are used as date rape drugs. (*Id.* ¶¶ 39-40.) Once again, the school contacted DCP&P and the South River Police Department to report the incident. (*Id.* ¶ 41.) A patrolman with the South River Police Department contacted DCP&P and confirmed that Plaintiff had a caseworker, Mrs. Harrison. (*Id.* ¶ 42.)

DCP&P told the patrolman that it was undetermined if DCP&P would make a physical visit to Plaintiff's residence regarding the incident. (*Id.*)

On October 3, 2019, Plaintiff reported to a teacher that Grandfather was doing things to her that frightened and confused her. (*Id.* ¶ 45.) Plaintiff further disclosed that Grandfather was touching her while Grandmother was in the other room and that Grandmother would tell Grandfather to stop his behavior but she would take no other action. (*Id.* ¶ 46.) Plaintiff complained of pain between her legs, and scratches were observed between Plaintiff's inner thighs, which Plaintiff attributed to Grandfather grinding up against her. (*Id.* ¶ 47.)

In light of these disturbing allegations, Plaintiff was taken to the Middlesex County Prosecutor's Office for a forensic interview. (*Id.* ¶ 48.) During that interview, Plaintiff demonstrated two dolls' pelvises rubbing together. (*Id.*) Plaintiff was then taken from the Middlesex County Prosecutor's Office to the Robert Wood Jonson University Hospital and admitted. (*Id.* ¶ 49.)

While admitted at the hospital, Plaintiff explained that Grandfather touched her breasts and buttocks, and digitally penetrated her vagina. (*Id.* ¶ 50.) Plaintiff was found to have abrasions on her inner thighs and to be suffering emotional distress related to the sexual assaults. (*Id.* ¶ 52.) In addition to Plaintiff being sexually assaulted and penetrated by Grandfather on multiple occasions, Plaintiff did not receive appropriate medical or dental care during the years that she was with her grandparents, and her health, medical, psychological, emotional, and other needs, were neglected. (*Id.* ¶¶ 44, 55.)

###### B.    Procedural History

On July 19, 2021, Plaintiff filed her original Complaint in the Superior Court of New Jersey, Law Division, Middlesex County. (Removal Order ¶¶ 1-2, ECF No. 1.) The next day, while still in state court, Plaintiff filed her First Amended Complaint ("FAC"). (*Id.* ¶ 3.) On August 20, 2021, this matter was removed to this Court. (*See generally id.*) After Plaintiffs moved to dismiss the FAC, Plaintiff filed a SAC in part adding Israel and Beasley as defendants. (SAC ¶¶ 9-10.)

Plaintiff's SAC alleges five causes of action ("Counts"): (1) violation of substantive due process under 42 U.S.C. § 1983 alleging a special relationship theory; (2) violation of substantive due process under 42 U.S.C. § 1983 alleging a state-created danger theory; (3) violation of procedural due process civil rights under 42 U.S.C. § 1983; (4) violation of N.J. Stat. Ann. § 9:6B-1 *et seq.*, the Child Placement Bill of Rights Act ("CPBRA"); and (5) negligence under the New Jersey Tort Claims Act ("NJTCA"). (*Id.* ¶¶ 11-106.) Plaintiff alleges all Counts against all State Defendants. (*See id.*)

Before the Court now are Individual Defendants' motions to dismiss Counts One through Four brought against them.[3] (ECF Nos. 33, 37.) The State Defendants in this matter answered Plaintiff's Second Amended Complaint on August 31, 2022, and as such, any claims against them are not currently before this Court. (ECF No. 31.)

---

[3] Both Israel and Beasley withdrew their motions to dismiss Count V against them. (Def. Israel's Reply Br. 6, ECF No. 40; Def. Beasley's Letter, ECF No. 41.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[4] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III.   <u>DISCUSSION</u>

Both Israel and Beasley raise largely the same arguments against Plaintiff's claims. (*See generally* Def. Israel's Moving Br.; Def. Beasley's Moving Br., ECF No. 33-1.) As such, this Court will evaluate Individual Defendants' motions contemporaneously, but will conduct factual analyses separately, if necessary.

Individual Defendants' arguments can be broken into the following subsections: (1) arguments against Counts One through Three collectively ("Section 1983 Claims"); (2) arguments for qualified immunity; (3) arguments against Counts One and Two ("Federal Substantive Due Process Claims"); (4) arguments against Count Four, violation of the CPBRA[5]; and (5) arguments against Count Three, violation of federal procedural due process ("Federal Procedural Due Process Claim"). (*Id.*) The Court addresses each of these subsections in turn.

### A.   Section 1983 Claims (Counts I-III)

Individual Defendants bring two arguments against Plaintiff's Section 1983 Claims collectively: (1) that Plaintiff's claims fail as a matter of law because neither Israel nor Beasley constitutes a "person" for purposes of the statute; and (2) that Plaintiff's claims fail because most pleadings against them are brought as improper group pleadings. (Def. Israel's Moving Br. 7-9; Def. Beasley's Moving Br. 6-8; *see* Def. Beasley's Reply Br. 3, ECF No. 36.)

Plaintiff argues in opposition that because her allegations are against both Individual Defendants in their individual capacities, both Individual Defendants constitute "persons" under Section 1983. (Pl.'s Opp'n Br. Israel 11, ECF No. 39; Pl.'s Opp'n Br. Beasley 10, ECF No. 35.)

---

[5] For clarity, the Court addresses Individual Defendants' motion to dismiss Count Four before it addresses Individual Defendants' motion to dismiss Count Three because the Court's analysis of Individual Defendants' Count Four arguments informs the Court's discussion of Count III.

Plaintiff does not directly address Individual Defendants' group-pleading contentions. (*See generally* Pl.'s Opp'n Br. Israel; Pl.'s Opp'n Br. Beasley.)

> 1.      *Individual Defendants are "persons" for purposes of Section 1983*

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for a violation of her constitutional rights. *Rahman v. Taylor*, No. 10-367, 2010 WL 2178938, at *5 (D.N.J. May 27, 2010). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  Thus, to "state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Under Section 1983, states are not "persons" who may be sued for damages under the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991). Importantly, a suit against a state official in his or her official capacity is no different than a suit against the State itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 466, 471 (1985)). As such, where a plaintiff seeks damages, the Eleventh Amendment bars suits against state officials acting in their official capacity. *See id.* "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law[,]" and therefore are not barred by the Eleventh Amendment. *See Hafer*, 502 U.S. at 25.

Here, Individual Defendants maintain that to the extent Plaintiff asserts claims against them in their official capacities, all Section 1983 claims must be dismissed against them. (Def. Israel's

Moving Br. 7-9; Def. Beasley's Moving Br. 6-8.) Plaintiff does not disagree. (Pl.'s Opp'n Br. Israel 11; Pl.'s Opp'n Br. Beasley 10-11.) Instead, Plaintiff maintains in her Opposition Brief that she brings suit against Israel and Beasley in their personal capacities. (Pl.'s Opp'n Br. Israel 11; Pl.'s Opp'n Br. Beasley 10-11.) Plaintiff's SAC, however, does not specify in what capacity she brings her claims against Individual Defendants. (*See generally* SAC.)

Importantly, such omission does not necessitate dismissal of Plaintiff's SAC. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (finding that "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both" but that such failure does not necessitate a dismissal). Instead, the Court may look to "[t]he course of proceedings" to assess "the nature of the liability sought to be imposed." *Id.* (internal quotation marks omitted) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). To assess "the course of proceedings" in determining whether claims were brought against a defendant in his official capacity, the Supreme Court in *Holt* looked to language in plaintiffs' response to a motion for summary judgment and plaintiff counsel's comments in an opening statement, in evidentiary rulings, and in proceedings related to damages. 46 U.S. at 469-70.

Here, while this proceeding is in its early stages, Plaintiff's briefing clearly evidences an intent to bring her Section 1983 claims against Israel and Beasley in their individual capacities. (Pl.'s Opp'n Br. Israel 11 ("Counts One through Three of the [SAC] are asserted against Israel in her *personal* capacity for injuries she proximately caused under color of state law" (emphasis in original)); Pl.'s Opp'n Br. Beasley 10-11 ("Counts One through Three of Plaintiff's [SAC] are asserted against Beasley in his *personal* capacity for injuries he proximately caused under color of state law." (emphasis in original)). As such, Individual Defendants qualify as "persons" for purposes of Section 1983.

2. *Group Pleadings*

Individual Defendants next argue that Plaintiff employed improper group pleadings in her SAC. (Def. Israel's Moving Br. 14; *see* Def. Beasley's Reply Br. 3.) This Court has consistently held that "a complaint may not indiscriminately attribute wrongdoing to a group of defendants, leaving [the defendants] to guess as to who allegedly did what[.]" *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020) (collecting cases). In light of this rule, courts should not consider any group pleadings that cannot reasonably be attached to an individual defendant due to improper vagueness. *See Ingris v. Borough of Caldwell,* No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) (discrediting any allegations made by a plaintiff that could be characterized as an "impermissibl[e] vague group pleading").

Here, Plaintiff does at times summarily refer to "Defendants" when making certain allegations. (*See, e.g.*, SAC ¶ 25 ("Defendants . . . placed [Plaintiff] with Grandfather and Grandmother in or around 2015); ¶ 62 ("Defendants kept Plaintiff in the care and custody of her grandparents").) Such allegations may make it hard for the Court, and more importantly Individual Defendants, to ascertain whether certain allegations are being brought against Israel and/or Beasley. *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014) (finding that "[a]lleging that [d]efendants undertook certain illegal acts— without more—injects an inherently speculative nature into the pleadings, forcing both the [d]efendants and the [c]ourt to guess who did what to whom when.") The inclusion of some group pleadings alone, however, does not necessitate dismissal of the SAC. *C.f. Ingris*, 2015 WL 3613499 at *5 (finding that a plaintiff only engaged in impermissible group pleading to the extent that the plaintiff sought to lump several defendants together without setting forth what each particular defendant is alleged to have done but crediting other allegations that were sufficiently specific). The Court will, instead, only consider Plaintiff's allegations brought individually against

Israel and Beasley and group pleadings that inferentially implicate Israel and Beasley such that Individual Defendants are on notice of the allegations against them. (*See id.*)

For these reasons, the Court denies Individual Defendants' motion to dismiss Plaintiff's SAC on grounds that it contains impermissible group pleadings.

### B.   Qualified Immunity

Individual Defendants next argue that they are entitled to qualified immunity on Plaintiff's Section 1983 claims because Plaintiff cannot define a constitutional right and how it was violated by Individual Defendants. (Def. Israel's Moving Br. 12; Def. Beasley's Moving Br. 10.) Individual Defendants maintain that "even if the Court could identify a constitutional right that is implicated by the facts," qualified immunity still attaches because no such right was established at the time of wrongdoing. (*Id.*)

Plaintiff argues that neither Israel nor Beasley is entitled to qualified immunity because Individual Defendants unreasonably violated Plaintiff's clearly-established due process rights under the Fourteenth Amendment by: (1) "placing Plaintiff with a known child-abuser; (2) placing Plaintiff in an environment that was not [a] reasonably safe environment and did not meet her basic needs; and (3) violating various New Jersey statutory and administrative law[s]" aimed at preventing harm to foster children placed through DCF.[6] (Pl.'s Opp'n Br. Israel 15; Pl.'s Opp'n Br. Beasley 12.)

"The doctrine of qualified immunity insulates government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have

---

[6]Importantly, "a state statute cannot, in and of itself, create a constitutional right" capable of being violated under Section 1983. *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) (citation omitted). As such, the Court rejects Plaintiff's argument that Individual Defendants' alleged violations of state statutes renders them incapable of accessing qualified immunity.

known." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In other words, "[w]hen analyzing a qualified immunity claim, [courts] consider [two prongs:] (1) whether the plaintiff sufficiently alleged the violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the official's conduct." *Dennis v. City of Philadelphia*, 19 F.4th 279, 288 (3d Cir. 2021) (internal quotation marks and citation omitted). "[T]he inquiry into qualified immunity . . . is fact intensive [and] generally ill-suit[ed] for resolution at the pleadings stage." *Onuekwusi v. Graham*, No. 20-2965, 2021 WL 1085523, at *27-28 (D.N.J. Mar. 22, 2021) (quoting *Janowski v. City of North Wildwood*, No. 16-4464, 2017 WL 1821078, at *4 (D.N.J. May 5, 2017)). As such, qualified immunity will only be upheld on a 12(b)(6) motion "when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotation marks and citations omitted).

>    *1.     Prong One: Plaintiff suffered a violation of her constitutional rights*

Plaintiff alleges that Israel and Beasley, along with State Defendants in this matter, deprived Plaintiff of various rights protected by the Due Process Clause of the Fourteenth Amendment. (SAC ¶ 69.) The rights allegedly violated include in part: "the right to personal security and reasonably safe living conditions; the right to protection from harm; the right not to be harmed physically, emotionally, developmentally, or otherwise. . . [and] the right not to deteriorate in state custody." (*Id.*) All of these alleged violations stem from, in part, Individual Defendants alleged failure to protect Plaintiff from the harm Grandfather caused her and from unsafe living conditions while she was living with her grandparents. (*See id.* ¶¶ 64-68.)

In 1989, the Supreme Court held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process

Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Services*, 489 U.S. 189, 197 (1989). The Supreme Court acknowledged exceptions to this general rule, however, finding that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Nicini v. Morra*, 212 F.3d 798, 807-08 (3d Cir. 2000) (quoting *DeShaney*, 489 U.S. at 198). Two such limited circumstances are where a "special relationship" exists between a plaintiff and the State and where a plaintiff suffers a "state-created danger." *Id.*; *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006).

### a) "Special relationship" theory of a constitutional violation

The Third Circuit has recognized that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties," which, when a state actor fails to perform them, gives rise to liability under Section 1983. *Nicini v. Morra*, 212 F.3d 798, 807-08 (3d Cir. 2000). Here, Plaintiff alleges that State Defendants in this case, including Israel and Beasley, placed Plaintiff in state-regulated foster care with Grandmother and Grandfather despite Grandfather being a known, convicted, sex-offender. (SAC ¶¶ 12-13.) Plaintiff then alleges that Israel and Beasley failed to perform their affirmative constitutional duty to protect Plaintiff where they failed to act after being made aware that Plaintiff was being harmed while placed in Grandfather's home. (*See* SAC ¶¶ 27-31, 65-68.) As such, Plaintiff sufficiently alleges that Israel and Beasley violated her Fourteenth Amendment right to be protected from harm while in the State's custody.

### b) "State-created danger" theory of a constitutional violation

In the alternative, the Third Circuit has also recognized that where "state authority is affirmatively employed in a manner that injures a citizen or renders [her] 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention,'"

a plaintiff may be able to employ the "state-created danger doctrine" to show her constitutional rights have been violated. *See Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). Here, as aforementioned, Plaintiff alleges that State Defendants, including Israel and Beasley, placed Plaintiff in state-regulated foster care with Grandmother and Grandfather despite Grandfather being a known, convicted, sex-offender. (SAC ¶¶ 12, 13.) Plaintiff alleges that she was therefore placed in danger by Israel and Beasley, and that absent their affirmative actions, she would have avoided Grandfather's future sexual assaults. (*See id.* ¶¶ 73-82.) As such, Plaintiff sufficiently alleges that Israel and Beasley violated her Fourteenth Amendment right to be protected from "state-created dangers."

### 2. Prong Two: Plaintiff's constitutional rights were clearly established

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (first, second, third, and fourth alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The contours of a right are sufficiently clear where "existing precedent [places] the statutory or constitutional question beyond debate." *Id.* (citations omitted). "Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate." *Dennis*, 19 F.4th at 288.

### a) "Special relationship" constitutional rights

The Third Circuit's decision in *Nicini* clearly establishes that state workers can violate a foster-child's federal due process rights if "the state places a child in state-regulated foster care" and the state actors fail to protect them from known harm. 212 F.3d at 808-09. In *Nicini*, the State of New Jersey was having difficulty placing a foster child in a suitable environment. *Id.* at 801-03.

In the process of trying to find the child a successful home placement, the foster child, on his own volition, found a family to stay with that agreed to watch after him. *Id.* at 802-03. A state caseworker assigned to the foster child did a criminal background check on the new family but did not find any criminal records. *Id.* at 802.

A court subsequently decided that the foster child could stay with the new family provided certain conditions were met. *Id.* at 804. The state caseworker then sent the new family "an application to become para-foster parents." *Id.* The application process required several materials to be filled out, including "a police reference form" and "an authorization for release of information." *Id.* The family never filled out the application. *Id.* Four days after the application was sent to the family, the foster child fled the home, later telling investigators that the father of the family "had been providing him with drugs and alcohol and assaulting him sexually." *Id.* After further investigation, it was revealed that the father was previously convicted of corrupting the morals of a minor. *Id.*

In assessing the foster-child's action against the state caseworker who approved the placement of the foster-child with his eventual abuser, the *Nicini* Court found that a "special relationship" existed between the state caseworker and foster-child that imposed certain affirmative duties upon the state caseworker. *Id.* These affirmative duties include protecting the foster child from any known or predictable harm. *See id.* 806-08, 811 (finding in part that the Third Circuit previously found "courts have imposed a constitutional duty to protect foster children" and that the duty to protect foster children extends to dangers that a state actor either knows or may suspect). The underlying logic for such finding is that "[f]oster children, like the incarcerated or the involuntarily committed, are 'placed . . . in a custodial environment . . . [and are unable] to seek alternative living arrangements." *Id.* at 808 (second alteration in original) (citation omitted).

The *Nicini* decision is "controlling precedent in [this] jurisdiction," and as the Opinion was published in 2000, it was clearly established before Israel and Beasley's alleged wrongdoing. *See Dennis*, 19 F.4th at 288. As such, Individual Defendants are not insulated by qualified immunity against Plaintiff's federal due process claims under a "special relationship" theory.

**b)      "State-created danger" constitutional rights**

The Third Circuit's decision in *Bright* clearly establishes that state workers can violate a plaintiff's constitutional rights when they "affirmatively employ [state authority] in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" 443 F.3d at 281. The Third Circuit has upheld the state-created danger theory of liability as recently as 2018. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). While the facts underlying *Bright* and *Sauers*, unlike those underlying *Nicini*, do not directly concern a foster child, the Supreme Court "do[es] not require a case directly on point" to place a constitutional question beyond debate. *Ashcroft*, 563 U.S. at 741.

Instead, as previously mentioned, only "controlling precedent in [this] jurisdiction" can place a constitutional question beyond debate. *See Dennis*, 19 F.4th at 288. *Bright* and *Sauers* are controlling precedent in this jurisdiction and serve to establish the "state-created danger" doctrine as a basis to state a substantive due process claim against state actors who place an individual in a danger of the state's design. *See id*. As *Bright* was decided in 2006, the state-created danger doctrine was clearly established before Israel and Beasley's alleged wrongdoing, and Individual Defendants were on notice that if they placed Plaintiff in a dangerous environment and failed to act to protect her, they may be liable for a constitutional violation under the theory. As such,

Individual Defendants are also not insulated by qualified immunity against Plaintiff's federal due process claims under a "special relationship" theory.

### C.    Federal Substantive Due Process Claims (Counts I & II)

As mentioned above, Plaintiff alleges Individual Defendants violated her substantive due process rights and advances both a "special relationship" and "state-created danger" theory of liability under Section 1983. (Second Am. Compl. ¶¶ 11-82.) Individual Defendants argue that Plaintiff cannot sustain a claim under either theory as a matter of law. (Def. Israel's Moving Br. 15-18; Def. Beasley's Moving Br. 13-16.) The Court will assess the merits of both theories, but first, the Court must conduct a "shocks-the-conscience test" to determine whether Plaintiff can sustain her substantive due process claims. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (collecting cases) ("The shocks-the-conscious test applies regardless of the theory upon which the substantive due process claim is premised.").

### 1.    Individual Defendants' conduct "shocks the conscience"

"To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.'" *Id.* at 973 (3d Cir. 2015) (citing *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001)); *see also Nicini*, 212 F.3d at 810. As outlined in the Court's discussion of qualified immunity, Plaintiff has adequately alleged that she has an interest in being protected from harm while in the State's custody as a foster child and that she has an interest in being protected from state-created harm. *See Bright*, 443 F.3d at 281; *Nicini*, 212 F.3d at 807-08. The Court, then, must only now assess whether Individual Defendants' alleged conduct "shocks the conscience."

"The exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case." *Nicini*, 212 F.3d at 810 (internal quotation

marks omitted) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)). While

the tests vary as to what conduct may shock the conscience, "in the foster care context," courts,

including the *Nicini* Court, typically apply a "deliberate indifference standard." *Id.* at 810-11.

Under the deliberate indifference standard, a court evaluates whether a defendant "knowingly

disregarded 'an excessive risk to [plaintiff's] health and safety.'" *Id.* at 811; *see also Y.V. by Krasny*

*v. N.J. Dep't of Children and Families*, No. 21-18770, 2022 WL 2347169, at *5 (D.N.J. June 29,

2022) (quoting *Gonzalez v. N.J. Dep't of Child. And Families*, 545 F. Supp. 3d 178, 23 (D.N.J.

2021)).

The allegations against Individual Defendants, taken as true, shock the conscience of this

Court. Plaintiff alleges that Israel and Beasley participated in the decision to place Plaintiff in

Grandfather's home, despite Grandfather having been previously convicted of sexually abusing

his own daughters. (SAC ¶¶ 12, 22-24.) Individual Defendants, therefore, by allegedly helping

place Plaintiff with Grandfather, certainly would have helped place Plaintiff in an environment

that threatened "excessive risk to [Plaintiff's health] and safety." (*Id.*; *Nicini*, 212 F.3d at 810-11.)

Moreover, Plaintiff alleges that Individual Defendants "knowingly" disregarded such risk where

State Defendants, including Individual Defendants, were aware of Grandfather's criminal record

but decided to place Plaintiff in a home with him regardless. (SAC ¶¶ 25, 77.) Furthermore,

Plaintiff's allegation that State Defendants, including Individual Defendants, stipulated that

Plaintiff not be left alone with Grandfather when placing Plaintiff with her grandparents supports

Plaintiff's allegations that State Defendants knew Grandfather was a risk to Plaintiff but decided

to disregard that risk. (*Id.* ¶¶ 12, 25.) Such conduct, if shown to be true, certainly shocks the

conscience of this Court.

The more specific allegations against Israel and Beasley also shock the Court's conscience. As against Israel, Plaintiff alleges Israel was made aware of two separate incidents that suggested Plaintiff was being harmed in Grandfather's home. (*See id.* ¶¶ 29, 31.) Specifically, Plaintiff alleges Israel was told by Francione that it appeared Plaintiff had bruises from someone grabbing or squeezing Plaintiff's hand, and on a separate occasion, that a slit was discovered in Plaintiff's underwear. (*Id.* ¶¶ 29-30.) As such, Plaintiff adequately alleges Israel knew Plaintiff was being harmed. (*See id.*) Plaintiff also inferentially alleges that Israel, despite being told that Plaintiff was being harmed in Grandfather's home, did not act to stop the harm where Israel kept Plaintiff in Grandfather's home in the years that followed. (*See id.* ¶¶ 25, 29, 31, 66.)[7] As such, Plaintiff adequately alleges Israel disregarded an excessive risk to Plaintiff's health and safety. (*See id.*) Plaintiff's allegations against Israel therefore, taken together, are sufficient to meet the "shocks-the-conscience" standard at this stage.

The same can be said for the allegations against Beasley. Like Israel, Plaintiff alleges that Beasley was made aware of the slit in Plaintiff's underwear. (*Id.* ¶ 31.) Plaintiff also inferentially alleges that Beasley, despite being told that Plaintiff was being harmed in Grandfather's home, did not act to stop the harm where Beasley kept Plaintiff in Grandfather's home in the years that followed the incident. (*See id.* ¶¶ 25, 29, 31, 66.) Therefore, for the same reasons Plaintiff

---

[7] The Court recognizes that Plaintiff's allegations appear to suggest that Plaintiff's older brother, not Grandfather, slit a hole in Plaintiff's underwear. (*See* SAC ¶ 30.) This does not affect the Court's "shock-the-conscience" analysis, however, because no matter the alleged perpetrator of the sexual misconduct, Israel was allegedly aware that inappropriate sexual conduct may be occurring in Grandfather's home but did not intervene to protect Plaintiff. (*Id.* ¶ 31.) Any allegation of sexual misconduct while Plaintiff was in Grandfather's home, whether the misconduct was allegedly perpetrated by Grandfather or not, strongly suggests that Plaintiff may not be safe in Grandfather's home. This is especially true considering Grandfather's history.

adequately alleged Israel engaged in conduct that shocks the conscience, so too does Plaintiff adequately allege Beasley's conduct shocks the conscience.

>       *2.    Plaintiff properly pled a "special relationship" existed between Plaintiff and Individual Defendants*

To succeed on a substantive due process claim under a "special relationship" theory, a plaintiff must allege that a special relationship existed between plaintiff and defendants and that defendants failed to perform the affirmative duties imposed upon them as a result of that special relationship. *Nicini*, 212 F.3d at 808. As previously discussed, the Third Circuit has recognized that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties." *Id.* One such affirmative duty is to protect the foster child from harm while the child is under the State's care. *Id.* (finding in certain limited circumstances, such as where a special relationship exists, "the Constitution imposes upon the [state actors] affirmative duties of care and protection with respect to [protected] individuals.") *Id.* at 807-08.

As covered extensively in this Opinion,[8] Plaintiff adequately alleges that Individual Defendants were in a special relationship with Plaintiff when she was in state-regulated foster care[9] at the time they made the decision to place Plaintiff with Grandfather. (*See* ¶¶ 12, 65.)

---

[8] Individual Defendants argue that the Supreme Court's decision is *DeShaney* compels a finding by this Court that a special relationship cannot exist between Israel or Beasley and Plaintiff. (Def. Israel's Moving Br. 15-17; Def. Beasley's Moving Br. 13-15.) Individual Defendants' arguments under *DeShaney* are not persuasive. As discussed in detail above, the Third Circuit in *Nicini*, while interpreting *DeShaney*, found that state workers can violate a foster-child's federal due process rights if "the state places a child in state-regulated foster care" and the state actors fail to protect them from known harm. *Nicini*, 212 F.3d at 808-09.

[9] Individual Defendants argue that "DCF never took physical custody of Plaintiff, and there is no allegation that Plaintiff was ever in the custody of anyone other than her mother and grandparents." (Def. Israel's Moving Br. 17; Def. Beasley's Moving Br. 14.) In so arguing, Individual Defendants appear to misinterpret *Nicini*. The Third Circuit in *Nicini* held that when "the state places a child

Plaintiff also alleges that Individual Defendants failed to perform their affirmative duties to protect Plaintiff where they placed Plaintiff with a known sex-abuser and where Individual Defendants failed to remove Plaintiff from the sex-abuser's home despite being presented with information that suggested Plaintiff may be in danger. (*See id.* ¶¶ 12, 25, 29, 31, 66.) As such, Plaintiff alleged a "special relationship" between her and Individual Defendants sufficient to state claim upon which relief can be granted under the Fourteenth Amendment.

3.   *Plaintiff properly pled that Individual Defendants participated in a state-created danger*

To sustain a state-created danger claim under the Fourteenth Amendment a plaintiff must establish:

> (1) the harm ultimately caused plaintiff was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281.

Here, the Court finds that Plaintiff alleged sufficient facts to sustain a substantive due process claim under a theory of state-created danger as against Individual Defendants, but only to the extent Individual Defendants were allegedly involved in the decision to place Plaintiff in Grandfather's home. First, Plaintiff alleges that Grandfather's sexual assaults of Plaintiff were foreseeable given that Grandfather was previously convicted of abusing Mother. (SAC ¶¶ 21, 49-

---

in *state-regulated foster care*, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties." *Nicini*, 212 F.3d at 808 (emphasis added). Therefore, Plaintiff need not allege that the State exercised physical control over her, but only that Plaintiff was in state-regulated foster care before being placed in Grandfather's home in some capacity.

53, 75.) Second, as previously established, the allegations against Individual Defendants "shock the conscience." (*See id.* ¶¶ 12, 25, 29, 31, 66.)  Third, as also previously established, Plaintiff adequately alleged a special relationship existed between Individual Defendants and Plaintiff such that plaintiff was a foreseeable victim of Individual Defendants decision to place Plaintiff with Grandfather. (*See id.* ¶¶12, 65. 78.) Finally, Plaintiff alleges Individual Defendants affirmatively placed Plaintiff in a dangerous situation with Grandfather that did not exist before Individual Defendants' affirmative act. (*Id.* ¶ 79.)

For the above articulated reasons, Plaintiff adequately alleged that Individual Defendants affirmatively created a danger to Plaintiff by placing her with Grandfather. Accordingly, Individual Defendants' motion to dismiss Plaintiff's federal substantive due process claim on a theory of state-created danger is denied.

### D.      Violation of the CPBRA (Count IV)

The CPBRA provides that "a child placed outside of his or her home has rights consistent with 'the health, safety, and physical psychological welfare of the child.'" *Y.V.*, 2022 WL 2347169, at *5 (citing N.J. Stat. Ann. § 9:6B-4). "To state a claim under the [NJCBA], [a] plaintiff[] must plead that a defendant did not recognize or protect their rights." *Id.* These rights include "adequate food, shelter and medical care, and the right to a reasonably safe environment." *K.J. ex rel. Lowry v. Division of Youth and Family Services*, 363 F. Supp. 2d 738, 742 (D.N.J. 2005).

In response to Plaintiff's allegations under the CPBRA, Individual Defendants argue that Plaintiff alleged, at best, negligent indifferent action on the part of Individual Defendants. (Def. Israel's Moving Br. 24; Def. Beasley's Moving Br. 23.) In raising this argument against Plaintiff's CPBRA claims, Individual Defendants appear to conflate Plaintiff's CPBRA claim with Plaintiff's procedural due process claim. (*See* Def. Israel's Moving Br. 22-24; Def. Beasley's Moving Br. 20 (citing case law and stating "it should be noted that mere negligence is not sufficient to assert a

cause of action under procedural due process" (collecting cases)).) The CPBRA, however, is an independent state law cause of action not sounding in procedural due process. N.J. Stat. Ann. § 9:6B-4; *see also Y.V.*, 2022 WL 2347169, at *5 (making no mention of procedural due process in analyzing a plaintiff's claim under the CPBRA). As such, the Court can find no reason to assess Plaintiff's CPBRA claim under a procedural due process standard, and accordingly, the Court analyzes Plaintiff's CPBRA claim separately from Plaintiff's federal procedural due process claim.

Plaintiff successfully pleads a claim under the CPBRA. Plaintiff alleges that Israel and Beasley deprived her of her right to a reasonably safe environment under the CPBRA where Individual Defendants allegedly participated in the placing of Plaintiff with Grandfather and failed to act years later to protect her from abuse despite being made aware of potential harmful behavior occurring in Grandfather's home. (*See id.* ¶¶ 25, 29, 31, 66.) Accordingly, Individual Defendants' motion to dismiss Count IV is denied.

### E.    Federal Procedural Due Process Claim (Count III)

Individual Defendants argue that Count III must be dismissed because Plaintiff has not alleged that Plaintiff was deprived of her liberty. (Def. Israel's Moving Br. 22-24; Def. Beasley's Moving Br. 19-24.) Moreover, Individual Defendants argue, Plaintiff's allegations amount to nothing more than allegations of mere negligence by Individual Defendants, which even if true, are not sufficient to assert a federal procedural due process claim. (Def. Israel's Moving Br. 22-24; Def. Beasley's Moving Br. 19-24.) Plaintiff opposes and argues that state law, through the CPBRA, creates a liberty interest that implicates the federal procedural due process clause and protects Plaintiff from Individual Defendants actions. (*See* Pl.'s Opp'n Br. Israel 27-28; Pl.'s Opp'n Br. Beasley 29-30.)

The Court finds that Plaintiff fails to state a claim for violation of procedural due process under § 1983. "A plaintiff seeking relief under § 1983 for a violation of procedural due process

must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to [her] did not provide "due process of law."'" *R.B. v. Westmoreland County*, 526 F. App'x 181, 185 (3d Cir. 2013).

Here, Plaintiff maintains that she "alleged [her] placement with a known abuser deprived her [of her] liberty interest in a reasonably safe environment, as established by state law." (*See* Pl.'s Opp'n Br. Israel 28; Pl.'s Opp'n Br. Beasley 30.) Plaintiff writes in support of her argument:

> [t]he purpose of the [CPBRA] is to remedy the harm which arises when the State agencies and the placement system fail to carry out the State's affirmative obligation to protect the fundamental rights of the children entrusted to its care. Considering basic principles of statutory construction, the district court in *K.J.* c[ould] imagine no permissible reading of the [CPBRA] which would not provide a private remedy for the violation of certain rights of a child being placed outside of the home to adequate food, shelter and medical care, and the right to a reasonably safe environment.

(Pl.'s Opp'n Br. Israel 28 (internal quotation marks and citations omitted); Pl.'s Opp'n Br. Beasley 29-30 (internal quotation marks and citations omitted).)

Nothing in the CPBRA language that Plaintiff evaluates in her briefing establishes a liberty interest sufficient to sustain a federal procedural due process claim. Moreover, Plaintiff does not cite, nor can the Court conclude based on available case law, that Individual Defendants' violation of the CPBRA suffices to show they violated Plaintiff's procedural due process rights. Instead, it appears the opposite is true. *See Brown*, 922 F.2d at 1113 (finding "a state statute cannot, in and of itself, create a constitutional right" capable of being violated under Section 1983). Plaintiff's allegations, therefore, cannot sustain a claim for violation of federal procedural due process because the Court cannot conclude that the CPBRA's protections constitute an individual liberty interest under the Fourteenth Amendment. Given that amendment to this claim would be futile,

the dismissal of Count III of the Second Amended Complaint is with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002.)

## IV.   <u>CONCLUSION</u>

For the reasons outlined in this Memorandum Opinion, Individual Defendants' motions to dismiss are granted in part and denied in part. Specifically, Individual Defendants' motions to dismiss Counts I, II, and IV of Plaintiff's SAC are denied, and Individual Defendants' motions to dismiss Count III of Plaintiff's SAC are granted.

Date: May 23, 2023

<u>s/Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**